UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

SPRINGFIELD HOSPITAL,  )
    Plaintiff,  )
        )
        )
    v.  )    Docket No. 09-cv-00254-cr
        )
ROBERT HOFFMAN, Secretary,  )
Vermont Agency of Human Services,  )
and SUSAN BESIO, Director,  )
Office of Vermont Health Access,  )
    Defendants.  )

## DECISION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS

    This matter came before the court on February 11, 2010 for oral argument on the Defendants' Motion to Dismiss. Plaintiff, Springfield Hospital ("Hospital"), is represented by Michael A. Duddy, Esq. and Lauri Boxer-Macomber, Esq. Defendants Robert Hoffman ("Hoffman"), Secretary of the Vermont Agency of Human Services ("VAHS"), and Susan Besio ("Besio"), Director of the Office of Vermont Health Access ("OVHA") (collectively, "Defendants") are represented by Assistant Attorney General David R. Cassetty. The parties completed the filing of post-hearing memoranda on February 19, 2010.

    Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants request dismissal of the Hospital's Complaint. The Hospital opposes dismissal and contends that it has stated claims for injunctive and declaratory relief based upon Defendants' allegedly unauthorized and unlawful adjustments to the Hospital's Disproportionate Share Hospital ("DSH") payments under Vermont's Medicaid State Plan.

    For the reasons stated below, the court grants in part and denies in part Defendants' motion to dismiss.

## I.    Factual and Procedural Background[1]

The Hospital is "an acute care, critical access hospital, located in Springfield, Vermont" that participates as a provider in Vermont's Medicaid program. (Doc. 1, ¶¶ 11, 12.)  It provides "inpatient hospital care to a disproportionately high number of patients who participate in the Medicaid program or who are uninsured." (Doc. 1, ¶ 14.)  VAHS administers the Medicaid program in Vermont according to the provisions of the Medicaid State Plan, the Social Security Act, and federal regulations.  OVHA calculates and makes DSH payments to eligible hospitals according to the approved DSH methodology set out in the Medicaid State Plan. (Doc. 1, ¶¶ 20, 24.)

### A.    The Federal and State Medicaid DSH Program

The federal government, in tandem with state governments, operates the Medicaid program to provide health care services to needy individuals pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v (the "Medicaid Act"). (Doc. 1, ¶ 29.)  The Medicaid Act requires states to pay hospitals that serve a disproportionately large number of low income patients additional funds known as DSH payments.  These payments are geared to preserving access to inpatient services by Medicaid recipients and the low income, uninsured patient population. (Doc. 1, ¶¶ 30-31.)  The federal government distributes DSH funds to each state, which in turn distributes the funds to qualifying hospitals such as the Hospital. (Doc. 1, ¶¶ 33, 60.)

In order to qualify for federal payments, each state's DSH payment methodology must meet certain criteria and be approved by the Centers for Medicare and Medicaid Services ("CMS"). (Doc. 1, ¶ 37.)  A state's Medicaid State Plan must describe the approved DSH payment methodology used to distribute the DSH funding. (Doc. 1, ¶ 38.)

---

[1] The facts are derived from the Complaint, "the allegations of which are assumed to be true for purposes of adjudicating Defendants'[ ] motion to dismiss." *Kuck v. Danaher,* __ F.3d __, 2010 WL 1039273 at * 8 n.2 (2d Cir. Mar. 23, 2010); *see also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir. 2010) (in ruling on a motion to dismiss, "[t]he court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor.").

If a state proposes to change the approved DSH payment method described in the Medicaid State Plan, that state must first describe the change in a State Plan Amendment ("SPA") and submit it to the CMS for approval. (Doc. 1, ¶ 39.)

Before the CMS approves a SPA containing a new DSH payment methodology, the state must comply with certain procedures, including: (a) submitting the SPA to the Governor for review and comment; (b) providing written assurances to CMS regarding the state's findings; and © providing CMS with information on the impact of the new DSH payment rates on providers and the availability of services. (Doc. 1, ¶ 45.) A state may not use a new DSH payment methodology to pay qualifying DSH hospitals until that methodology has been described in a SPA that satisfies state and federal procedural and substantive criteria, the SPA has been approved by the CMS, and the SPA has become effective. (Doc. 1 ¶ 46.)

### B.  Vermont's DSH Methodology

Prior to distributing DSH payments for SFY 2009, OVHA drafted a SPA proposing a DSH payment methodology, and submitted it to CMS for approval. (Doc. 1, ¶¶ 51, 53.) On October 9, 2008, CMS approved the SPA, which was incorporated into Vermont's Medicaid State Plan. (Doc. 1, ¶¶ 55, 56.) Vermont's approved DSH payment methodology is based upon each qualifying hospital's percentage of statewide Medicaid inpatient days, and payments were made according to that methodology effective October 1, 2008. (Doc. 1, ¶¶ 61, 63.) During SFY 2009, the Hospital received over $2.5 million in DSH funding. (Doc. 1, ¶ 64.)

### C.  The New DSH Methodology

The Hospital asserts that, "upon information and belief," during May 2009, OVHA began working on a new methodology for calculating DSH payments (the "new DSH payment methodology"). In June 2009, OVHA informed the Hospital that its projected DSH payment for SFY 2010 would be $2,020,877. (Doc. 1, ¶¶ 67, 68.) In response, the Hospital asked Defendant Besio for information about the methodology used to calculate

3

its SFY 2010 DSH funding. Besio responded in August 2009, stating that the SPA containing the new DSH payment methodology had not yet been written and therefore had not been presented to the Governor or submitted to the CMS. (Doc. 1, ¶¶ 72, 74.) In a September 1, 2009 letter, Besio stated that OVHA intended to pay the Hospital three monthly DSH payments of $487,322.85 each (totaling $1,461,968.55), starting on October 16, 2009. (Doc. 1, ¶¶ 76, 78, 79.) The letter explained that OVHA had calculated the DSH payments based on a percentage of the hospital OBRA[2] limit, rather than on each qualifying hospital's percentage of statewide Medicaid inpatient days. The Hospital asserts that this constituted "a substantial change" in the DSH payment methodology approved by CMS on October 9, 2008. (Doc. 1, ¶¶ 80-82). In an October 2, 2009 letter, Besio stated that the OVHA had miscalculated the payments indicated in its September 1 letter, and that the Hospital would receive three monthly installment payments of $432,399.74 (totaling $1,297,199.22), beginning on October 23, 2009. (Doc. 1, ¶¶ 86, 88, 89.) On October 22, 2009, OVHA paid the Hospital $432,399.74. The second and third installments were due on November 20, 2009 and December 25, 2009. (Doc. 1, ¶¶ 97, 99, 101.)

The Hospital's Complaint, dated November 16, 2009, alleges that the new DSH payment methodology contains procedural and substantive defects that violate the relevant Medicaid statutes and regulations, as well as other statutory and constitutional provisions. The Complaint asserts the following causes of action:

(I) Violation of the Federal Medicaid DSH Procedural Requirements;

(II) Violation of the Federal Medicaid DSH Substantive Protections;[3]

(III) Violation of 42 U.S.C. § 1983;

(IV) Violation of the Due Process Clause of the U.S. Constitution (Fourteenth

---

[2] OBRA is the acronym for the Omnibus Budget Reconciliation Act.

[3] Although the Hospital alleges that Defendants violated the Medicaid Act's substantive provisions, it confirmed at oral argument that it does not allege a violation of Substantive Due Process under the Fourteenth Amendment or 42 U.S.C. § 1983. *See, e.g.,* doc. 11, p. 26.

Amendment);

    (V) Violation of the Supremacy Clause of the U.S. Constitution; and

    (VI) Violation of Vermont Law.

(Doc. 1.)

## II.    **Defendants' Motion to Dismiss**

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants move to dismiss the Complaint for failure to state a claim. In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level," and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *accord Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009).

In their motion to dismiss, the Defendants argue that the Complaint should be dismissed in its entirety because the Hospital's claims are not ripe, the Eleventh Amendment bars the suit, and Defendants are entitled to qualified immunity. (Doc. 7, pp. 2-8.) Defendants seek dismissal of Count III, contending that the Hospital has not stated a cause of action under § 1983. With regard to Count IV, Defendants seek dismissal because the Hospital has failed to allege a violation of procedural due process. (Doc. 7, pp. 5-6.)

The Hospital opposes the motion to dismiss, contending that: (a) the ripeness argument fails because the court's review of a motion to dismiss is limited to the pleadings; (b) the Eleventh Amendment does not bar suit because the Hospital seeks only prospective injunctive and declaratory relief; (c) the Complaint states causes of action under § 1983, the Due Process Clause, and the Supremacy Clause; and (d) the Defendants are not shielded by qualified immunity. (Doc. 11, 18.)

### A.    **Whether the Hospital's Claims Are Ripe for Adjudication**

Article III of the Constitution precludes resolution of a legal challenge "in the absence of [a] 'direct and immediate dilemma.'" *United States v. Johnson*, 446 F.3d 272, 278 (2d Cir. 2006) (quoting *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d

5

Cir. 1999)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985)). Ripeness is a jurisdictional inquiry. *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). As such, it is governed by Fed.R.Civ.P. 12(b)(1). Although the Defendants' motion to dismiss was styled as a motion under Fed.R.Civ.P. 12(b)(6), a court may construe a "ripeness objection as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) . . . , even though defendants have not referenced that Rule." *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F.Supp.2d 349, 356 n.3 (E.D.N.Y. 2007).

The Defendants assert that the Hospital's claim challenging the legality of the most recent SPA is not ripe for adjudication because the applicable regulations provide that after a SPA is submitted, CMS has 90 days to determine whether the SPA is acceptable. They contend that "[u]ntil the CMS has fully considered the most recent SPA, this controversy is premature and not ripe for review." (Doc. 7, p. 3.) This argument is based entirely upon unsworn factual allegations contained in Defendants' Memorandum of Law. The Defendants cite no authority for the court's consideration of this information and the court has found none. *Cf. Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("a district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss.") (internal citations omitted). Accordingly, Defendants' motion to dismiss the Complaint on the ground of ripeness must be DENIED.

**B.    Whether the Eleventh Amendment Bars All or Part of the Complaint**

Defendants seek dismissal of all claims against Hoffman and Besio in their official capacities on the ground that such claims are barred by the Eleventh Amendment. (Doc. 7, p. 2; Doc. 12, p. 5.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. The Supreme Court has explained:

> While the Amendment by its own terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State. It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment.

*Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (citations omitted). In order to analyze whether the Eleventh Amendment bars the Hospital's claims, the court must first examine the nature of the relief requested.

### 1. Injunctive Relief

The Hospital has sued the individual Defendants in both their official and personal capacities. (Doc. 1, ¶¶ 17, 21.) "'[A]n official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'" *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). When a suit names state officials as defendants and seeks to recover money, the Eleventh Amendment will bar the action if the state is "the real, substantial party in interest." *Regents of the Univ. of Cal.*, 519 U.S. 425, 429 (1997) (quotation and citation omitted). This prohibition does not, however, extend to prospective injunctive relief:

> [S]overeign immunity [does] not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them "immunity from responsibility to the supreme authority of the United States."

*Dairy Mart Convenience Stores, Inc. v. Nickel (In re Dairy Mart Convenience Stores, Inc.)*, 411 F.3d 367, 371 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. 123, 160 (1908)).

Whether "a litigant's claim falls under the *Ex parte Young* exception to the Eleventh Amendment's bar against suing a state is a 'straightforward inquiry' that asks 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly

characterized as prospective.'" *Id.* at 372 (quoting *Verizon Md., Inc. v. Pub Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, the Hospital alleges an ongoing violation of federal law—that improper DSH payments will continue to be made unless the state officials are enjoined from following the new methodology. (Doc. 1, ¶¶ 6, 8, 9, 97-107, 128, 141-146.) Based upon this alleged violation, the Hospital makes two requests for injunctive relief:

> E. That the Court provide permanent injunctive relief ordering the Defendants to calculate the Hospital's SFY 2010 DSH funding according to the DSH payment methodology approved by CMS on October 9, 2008 and contained in Vermont's Medicaid State Plan; [and]

> F. That the Court provide permanent injunctive relief ordering the Defendants to promptly pay Springfield Hospital such additional sum as is necessary to ensure that for SFY 2010 Springfield Hospital is paid the full amount due and owing under the DSH payment methodology approved by CMS on October 9, 200[8] and contained in Vermont's Medicaid State Plan.

(Doc. 1, Prayer for Relief, ¶¶ E- F.)

The Eleventh Amendment "bars suits whose direct outcome will diminish the public fisc through the award of retroactive damages." *Dairy Mart*, 411 F.3d at 374. In order to determine whether the requests for relief in ¶¶ E and F fall within this prohibition, a court must explore the actual relief requested, rather than the label describing that relief. *See Papasan v. Allain*, 478 U.S. 265, 278-79 (1986) ("For Eleventh Amendment purposes, the line between permitted and prohibited suits will often be indistinct[.] . . . In discerning on which side of the line a particular case falls, we look to the substance rather than to the form of the relief sought. . . .") (citations omitted).

The Hospital's first request for injunctive relief, (¶ E) is prospective, as it asks the Defendants to calculate, for the first time, the SFY 2010 DSH funding according to the October 2008 payment methodology. Granting this relief has no direct monetary consequences to the state fisc as it seeks to adjust payments to be made in the future. *See Russo v. City of Hartford*, 184 F.Supp.2d 169, 181 (D.Conn. 2002) (denying state

defendants' motion to dismiss plaintiff's claim for prospective injunctive relief where Eleventh Amendment bar was raised). Accordingly, Defendants' motion to dismiss the Hospital's request for prospective injunctive relief is hereby DENIED.

In contrast, the relief requested in ¶ F—payment of the full amount due and owing under the October 2008 DSH payment methodology for SFY 2010—constitutes the kind of retroactive monetary relief barred by the Eleventh Amendment.

> It is one thing to tell the [state official] that he must comply with the federal standards for the future if the state is to have the benefit of federal funds in the programs he administers. It is quite another thing to order [the state official] to use state funds to make reparation for the past.

*Edelman*, 415 U.S. at 665 (quotation and citation omitted). In practical effect, this relief is

> indistinguishable in many aspects from an award of damages against the State. It will to a virtual certainty be paid from state funds and not from the pockets of the individual state officials who were defendants in the action. It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.

*Id.* at 668. Because the Hospital seeks payment of approximately $1.2 million from the state fisc that was allegedly wrongly withheld under the new DSH payment methodology, the relief sought in ¶ F is barred by the Eleventh Amendment. *See De Jesus-Keolamphu v. Village of Pelham Manor*, 999 F.Supp. 556, 564 (S.D.N.Y. 1998) (granting motion to dismiss on Eleventh Amendment grounds because plaintiffs were seeking retroactive monetary relief against state defendants in their official capacities). Defendants' motion to dismiss the Hospital's claim for retrospective injunctive relief is therefore GRANTED.

2. Declaratory Relief

The Complaint contains two requests for relief pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 (2006):

> B. That the Court declare the Defendants have violated federal and state statutes and regulations by using the [new] DSH Payment Methodology to calculate Springfield Hospitals' SFY 2010 payments, rather than the DSH payment methodology approved by CMS on October 9, 2008 and contained

in Vermont's Medicaid State Plan. [and]

> C. That the Court declare the [new] DSH Payment Methodology violates federal and state statutes and regulations and is contrary to law, null, void, and cannot be used as the basis to calculate, limit or cut Springfield Hospital's DSH payments.

(Doc. 1, Prayer for Relief ¶¶ B, C.) Defendants assert that these requests constitute retroactive relief barred by the Eleventh Amendment. (Doc. 12, p. 5.) The Hospital counters that these requests for declaratory relief arise out of current and continuing violations of federal law and thus survive the Eleventh Amendment bar. (Doc. 11, pp. 6-7.)

"A plaintiff may use *Ex parte Young* to seek . . . declaratory relief, *see Western Mohegan Tribe & Nation v. Orange County*, 395 F.3d 18, 21 (2d Cir. 2004) (per curiam), but the relief must address an ongoing or threatened violation of federal law and be prospective only, *see Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000)." *Goodspeed Airport, LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 632 F.Supp.2d 185, 187-88 (D.Conn. 2009). Again, the court's inquiry in this regard is "straightforward" and examines whether the relief sought is "properly characterized as prospective." *Verizon Md., Inc.*, 535 U.S. at 645-46; *see also ABC Charters, Inc. v. Bronson*, 591 F.Supp.2d 1272, 1292 (S.D.Fla. 2008) (applying *Verizon* "straightforward inquiry" requirement to suit against state official for prospective injunctive and declaratory relief).

The relief requested in ¶ B of the Complaint is retroactive, as it seeks a declaration concerning the Defendants' past violation of the statutes and regulations at issue in this case. As such it is barred by the Eleventh Amendment. *See Green v. Mansour*, 474 U.S. 64, 74 (1985) (Eleventh Amendment bars federal courts from granting declaratory relief that state officials' past conduct violates federal law).[4] The court thus hereby GRANTS Defendants'

---

[4] Even in the absence of an Eleventh Amendment bar, the court could properly deny this relief. *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."); *Ippolito v. Meisel*, 958 F.Supp. 155, 165 (E.D.N.Y. 1997) ("[C]ourts are not obliged to entertain actions for declaratory

motion to dismiss the Hospital's request for declaratory relief set forth in ¶ B of the Complaint.

In contrast, ¶ C of the Complaint seeks a declaration that the Defendants' violation is occurring in the present and that the allegedly illegal new DSH payment methodology cannot be used in the future. Accordingly, ¶ C seeks prospective relief that is not barred by the Eleventh Amendment. *Goodspeed Airport*, 632 F.Supp.2d at 187-88. With respect to the relief requested in ¶ C, Defendants' motion to dismiss is hereby DENIED.

## C. Whether the Hospital States a Claim under § 1983 and Federal Statutes

Defendants seek dismissal of Count III of the Complaint for failure to state a claim under 42 U.S.C. § 1983. Although Defendants do not specifically address the Hospital's claims under Counts I and II for violations of the procedural and substantive provisions of certain Medicaid statutes, the court's analysis applies to those claims as well.

The Hospital asserts that under 42 U.S.C. §§ 1396a(a)(13), 42 U.S.C. § 1396a(a)(30), 42 U.S.C. § 1396r-4, and related federal regulations,[5] it had a federal right to notice, comment, and other procedural safeguards, as well as a right to substantive protections, before Defendants could adopt the new DSH payment methodology. The Hospital further contends that Defendants violated 42 U.S.C. § 1983 by depriving the Hospital of its property interest in properly-calculated DSH payments without due process of law in violation of the United States Constitution and federal and state law. (Doc. 1, ¶¶ 157-160.)

To establish its claim under 42 U.S.C. § 1983 set forth in Count III, the Hospital must show that Defendants, acting under color of state law, deprived it of a constitutional or federal statutory right. *See Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Section 1983 creates no substantive rights, but provides "a procedure of redress for the deprivation of

judgment not seeking prospective relief but merely declaring past wrongs.").

[5] The Hospital concedes that "[a]gency regulations cannot in and of themselves create a private right of action . . ." (Doc. 11, p. 18.) Because the court concludes that the relevant statutes do not endow the Hospital with federally enforceable rights, the court does not examine the federal regulations which the Hospital asserts "clarify" those statutes.

rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). A plaintiff can succeed in a § 1983 action if (1) the statute creates enforceable rights, privileges or immunities within the meaning of section 1983 and (2) Congress has not foreclosed such enforcement of the statute in the enactment itself. *Concourse Rehab. & Nursing Ctr. v. Whalen*, 249 F.3d 136, 143 (2d Cir. 2001). In *Blessing v. Freestone*, 520 U.S. 329 (1997), the Supreme Court held that before a federal statute may be deemed to confer individual federal rights:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Id.* at 340-41 (citations omitted). In order to seek redress through § 1983, therefore, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Id.* at 340 (emphasis in original) (citation omitted).

In order to assert claims for violations of federal statutes under Counts I and II of the Complaint, the Hospital must first establish that the statutes in question create a private right of action. In *Cort v. Ash*, 422 U.S. 66 (1975), the Supreme Court set out a four-factor test for determining whether a federal statute implies a private right of action:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted,–that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78 (citations and quotation marks omitted). In two cases after *Cort*, the Supreme Court emphasized that congressional intent is the primary determinant in this inquiry. *See*

*Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-76 (1979) (stating that "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action" and that the remaining three factors are "traditionally relied upon in determining legislative intent."); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979) (reiterating that "[t]he dispositive question remains whether Congress intended to create any such remedy"). "[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transp. Workers Union of America*, 451 U.S. 77, 94 (1981).

The *Cort* and *Blessing* tests dovetail in requiring a plaintiff to establish, in the first instance, that Congress intended to confer benefits upon a class of beneficiaries of which the plaintiff is a member:

> A court's role in discerning whether personal rights exist in the § 1983 context should therefore not differ from its role in discerning whether personal rights exist in the implied right of action [under a federal statute] context. . . . Both inquiries simply require a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries.

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (citations and internal quotations omitted). In *Santiago ex rel. Muniz v. Hernandez*, 53 F.Supp.2d 264 (E.D.N.Y. 1999), the district court explained:

> Both tests first ask whether a plaintiff is the intended beneficiary of a given statute. If a plaintiff fails to meet this intended beneficiary criterion, then the plaintiff does not have a federally enforceable right under § 1983 or a private right of action under the statute, and there is no need to consider the remaining *Blessing* or *Cort* factors.

*Id.* at 268.

As demonstrated below, with regard to each of the federal statutes cited by the Hospital, there is no evidence that Congress intended to confer enforceable rights and remedies upon health care providers or any other class of beneficiaries of which the Hospital

is a member. *See Gonzaga*, 536 U.S. at 284 ("But even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'") (quotation omitted) (emphasis supplied).

1.    Section 1396a(a)(13)(A) and Section 1396r-4

Pursuant to 42 U.S.C. § 1396a(a)(13)(A)(2006) ("§ 13(A)"), a state plan changing Medicaid rates must provide:

> (A) for a public process for determination of rates of payment under the plan for hospital services, nursing facility services, and services of intermediate care facilities for the mentally retarded under which--
>
>> (i) proposed rates, the methodologies underlying the establishment of such rates, and justifications for the proposed rates are published, (ii) providers, beneficiaries and their representatives, and other concerned State residents are given a reasonable opportunity for review and comment on the proposed rates, methodologies, and justifications, (iii) final rates, the methodologies underlying the establishment of such rates, and justifications for such final rates are published, and (iv) in the case of hospitals, such rates take into account (in a manner consistent with section 1923) the situation of hospitals which serve a disproportionate number of low-income patients with special needs.

42 U.S.C. § 1396a(a)(13)(A).

In conjunction with § 13(A), the Hospital relies on two specific provisions of § 1396r-4 to support its private cause of action and § 1983 claims. (Doc. 11, p. 11.) Section r-4(a)(2)(D) provides that a state plan does not meet the § 13(A) requirements unless the state has submitted a description of the methodology used "to identify and to make payments to disproportionate share hospitals . . . on the basis of the proportion of low-income and medicaid patients . . . served by such hospitals." Section r-4(c)(3)(B), entitled "Payment adjustment," provides:

> [A] payment adjustment for a disproportionate share hospital must . . .
>
> * * *
>
> (3) provide for a minimum specified additional payment amount (or increased

percentage payment) that varies according to type of hospital under a methodology that—

\* \* \*

> (B) results in an adjustment for each type of hospital that is reasonably related to the costs, volume, or proportion of services provided to patients eligible for medical assistance under a State plan approved under this subchapter or to low-income patients...

42 U.S.C. § 1396r-4(c)(3)(B).

By their plain language, neither Section 13(A) nor Section 1396r creates a private cause of action or enforceable federal rights on behalf of health care providers. *See Gonzaga*, 536 U.S. at 287 (statutory provision fails to confer enforceable rights when it "entirely lack[s] the sort of 'rights-creating' language critical to showing the requisite Congressional intent to create new rights"). Moreover, the Court of the Appeals for the Second Circuit has held that neither 42 U.S.C. § 1396a(a)(13)(A) nor 42 U.S.C. § 1396r-4 create federally enforceable rights.[6]

In *New York Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147

---

[6] The Hospital urges this court to reject controlling precedent and rely upon cases from other jurisdictions such as *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 443 F.3d 1005, 1013 (8th Cir. 2006) (relying on earlier Eighth Circuit decisions which "specifically held" that subsections 13(A) and 30(A) "created enforceable federal rights" for Medicaid providers under § 1983), *vacated in part, Selig v. Pediatric Specialty Care, Inc.*, 551 U.S. 1142 (2007) (vacating judgment with respect to individual capacity claims against two individual defendants) and *Am. Soc'y of Consultant Pharmacists v. Concannon*, 214 F.Supp.2d 23, 28-29 (D.Me. 2002) (holding that "the language of Section 13(A) supports a cause of action pursuant to Section 1983" by providers and beneficiaries of, *inter alia*, hospital services, and that they may "enforce the right guaranteed by Section 13(A) via a private action."). The Hospital also refers to *Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50, 54 (1st Cir. 2004) which approvingly quoted *Concannon*, 214 F.Supp.2d at 28-29, for the "finding" that § 13(A) "requires something on the order of notice and comment rulemaking for states in their setting of rates for reimbursement of hospital services . . . provided under the Medicaid Act." *Ferguson*, however, does not support such a finding and held that the plaintiffs (closed pharmacies) fell outside of the protections of § 13(A). In addition, the Hospital refers to *Mission Hosp. Reg'l Med. Ctr. v. Shewry*, 168 Cal. App. 4th 460, 85 Cal. Rptr. 3d 639 (Cal.App.3 Dist. 2008). The *Shewry* court commented in a footnote, "in passing," that the plaintiff hospital "may have standing to enforce at least section (13)(A)" under § 1983. *Id.* at 480, n. 6, 85 Cal.Rptr.3d at 651.

(2d Cir. 2006), the Second Circuit adopted the district court's conclusion that "according to the legislative history, Congress intended to free the states from federal regulation and to eliminate a basis for causes of action by providers to challenge reimbursement rates." *In re NYAHSA Litig.*, 318 F.Supp.2d 30, 38-39 (N.D.N.Y. 2004) (quoting *Evergreen Presbyterian Ministries, Inc. v. Hood*, 235 F.3d 908, 919 n.12 (5th Cir. 2000) (citing H.R.Rep. No. 105-149, at 1230: "It is the Committee's intention that, following the enactment of [the Balanced Budget Act of 1997], neither this nor any other provision of [§ 1396a] will be interpreted as establishing a cause of action for hospitals and nursing facilities relative to the adequacy of the rates they receive."). The Second Circuit thus unequivocally affirmed the dismissal of a health care provider's claims:

> The [district] court further held that health care providers had no enforceable federal rights under §§ 1396a(a)(13)(A) and 1396a(a)(30)(A). . . . Having carefully considered all the arguments raised on appeal, we affirm for the reasons set forth in the district court's well-reasoned Memorandum-Decision and Order.

*DeBuono*, 444 F.3d at 148.

In *DeBuono*, the Second Circuit also affirmed the district court's conclusion that plaintiff-providers' claims, based on sections 13(A) and 30(A) of the Medicaid Act, were "unenforceable against the defendants by providers through 42 U.S.C. § 1983" and its further conclusion that "§ 1396r does not create a federally enforceable right because it was obviously intended to benefit Medicaid beneficiaries, not providers." *In re NYAHSA Litig.*, 318 F.Supp.2d at 36-37, 39-40 (quotation and citation omitted); *see also Children's Seashore House v. Waldman*, 197 F.3d 654, 659-60 (3d Cir. 1999) (concluding that Section r-4 "imposes neither procedural nor substantive requirements on a state" that would allow a provider to press its § 1983 claims).

The Second Circuit's *DeBuono* opinion requires dismissal of both the Hospital's statutory and § 1983 claim under 42 U.S.C. § 1396(a)(13)(A) and § 1396r-4. With regard to these claims, Defendants' motion to dismiss is hereby GRANTED.

16

### 2. Section 1396a(a)(30)(A)

The Hospital fares no better with its claim that 42 U.S.C. § 1396a(a)(30)(A) ("§ 30A") creates federal rights that support a private cause of action for violation of the statute as well as provides the basis for the Hospital's § 1983 claim. Section 30A requires a Medicaid state plan to

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A). Again, nothing in the plain language of this statute reflects "the sort of 'rights-creating' language critical to showing the requisite Congressional intent to create new rights." *Gonzaga*, 536 U.S. at 287. "The provision focuses instead upon the state as the person regulated rather than individuals protected, suggesting no intent to confer rights on a particular class of persons, or at least not providers." *Ferguson*, 362 F.3d at 57.

In any event, *DeBuono* disposes of the Hospital's claims under Section 30(A) as well, as the Second Circuit affirmed the district court's holding that health care providers had no enforceable federal rights under § (30)(A), and therefore could not state a claim under § 1983. *DeBuono*, 444 F.3d at 148. The weight of authority from other circuits supports this conclusion. The First, Third, Fifth, Sixth, Ninth and Tenth Circuits have all held that § 30(A) does not give providers a right under § 1983 to challenge Medicaid reimbursement rates. *See Equal Access for El Paso v. Hawkins*, 509 F.3d 697, 703-04 (5th Cir. 2007); *Mandy R. ex rel Mr. and Mrs. R. v. Owens*, 464 F.3d 1139, 1148 (10th Cir. 2006); *Westside Mothers v. Olszewski*, 454 F.3d 532, 540-43 (6th Cir. 2006); *Sanchez v. Johnson*, 416 F.3d 1051, 1059-61 (9th Cir. 2005); *Ferguson*, 362 F.3d at 57-59; and *Pa. Pharmacists Ass'n v. Houstoun*, 283 F.3d 531, 541-42 (3d Cir. 2002).

Accordingly, under *DeBuono*, the Hospital has failed to state a private right of action under 42 U.S.C. §§ 1396a(a)(13)(A), 42 U.S.C. § 1396a(a)(30)(A), and 42 U.S.C. § 1396r-4. It has also failed to state a claim based on these same statutes pursuant to 42 U.S.C. § 1983. As a result, the court hereby GRANTS Defendants' motion to dismiss Counts I, II and III of the Complaint.[7]

### D. Whether the Hospital Establishes a Violation of the Due Process Clause

Count IV of the Complaint asserts that the "Defendants have violated the Due Process Clause, U.S. Const. amend. XIV by depriving Springfield Hospital of a property interest without due process of law." (Doc. 1, ¶ 163.) The Second Circuit has recently ruled:

> To succeed on a claim of procedural due process deprivation under the Fourteenth Amendment—that is, a lack of adequate notice and a meaningful opportunity to be heard—a plaintiff must first establish that state action deprived him of a protected property interest. *Sanitation [& Recycling Indus. v. City of New York*, 107 F.3d 985, 995 (2d Cir. 1997)]. Property interests that are protected by the Due Process Clause of the Fourteenth Amendment are not created by that amendment; they are defined by "existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). When alleging a property interest in a public benefit, the plaintiff must show "a legitimate claim of entitlement" to such interest that is grounded in established law. *Id.*

*Spinelli v. City of New York*, 579 F.3d 160, 168-69 (2d Cir. 2009).

The Hospital cites the Vermont Medicaid Rules and State Plan that require the Defendants to comply with public notice regulations before changes can be made to the calculation of DSH payments, and asserts that it has a "constitutionally protected property interest in continued DSH payments at the rate calculated according to the approved DSH payment methodology contained in the Vermont State Plan." (Doc. 11, p. 20.) The only authority the Hospital cites for this proposition is the Eighth Circuit's opinion in *Pediatric*

---

[7] The issue of whether the Hospital has asserted sufficient personal involvement of Defendant Hoffman under § 1983 therefore becomes moot.

*Specialty Care, Inc.*, 364 F.3d at 929-30. *Pediatric Specialty Care* was a § 1983 action wherein the court held that § 30(A) supported a procedural due process claim. The Eighth Circuit stands alone among the circuits in recognizing a § 1983 claim on that statutory basis.

In contrast, in *DeBuono*, 444 F.3d at 148, the Second Circuit expressly affirmed that health care providers have no enforceable federal rights under § 13(A) or § 30(A). Accordingly, under controlling precedent, a health care provider has no "legitimate claim of entitlement" to a particular methodology for calculating DSH payments. *See Burlington United Methodist Family Servs., Inc. v. Atkins*, 227 F.Supp.2d 593, 597 (S.D.W.Va. 2002) (holding that Medicaid services providers had no right to a particular type of rate methodology and dismissing plaintiffs' Fourteenth Amendment procedural due process claim); *see also HCMF Corp. v. Gilmore*, 26 F.Supp.2d 873, 880 (W.D.Va. 1998) (dismissing providers' due process claim for alleged violations of § 13(A)'s reimbursement standards, stating that "With the repeal of the Boren Amendment, nothing remains that remotely resembles a federal right to reasonable and adequate rates"), cited approvingly in *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001). In the absence of a protected property interest in properly calculated DSH payments, the Hospital's procedural due process claim must fail. *See Roth*, 408 U.S. at 577-78. The court therefore GRANTS the Defendants' motion to dismiss Count IV of the Complaint for failure to state a claim.

## E. Whether the Defendants are Entitled to Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Rather than being "a mere defense to liability," qualified immunity is "an *immunity from suit*," which is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (emphasis in original). "[T]he defense of qualified immunity protects only individual defendants sued in their individual capacity, not governmental entities, and it protects only against claims for damages, not against claims

for equitable relief." *Rodriguez v. City of New York*, 72 F.3d 1051, 1065 (2d Cir. 1995) (internal citations omitted).

Here, the Hospital has not sought an award of damages against Hoffman and Besio—only injunctive relief. Accordingly, qualified immunity is not available as a defense and the court need not examine whether the alleged statutory violations were clearly established, or whether it was "objectively reasonable for the defendant to believe that his action did not violate such law." *Poe v. Leonard*, 282 F.3d 123, 133 (2d Cir. 2002) (quotation marks and citation omitted). Defendants' motion to dismiss the Hospital's requests for injunctive relief on the ground of qualified immunity must therefore be DENIED.

### F.    Whether the Hospital's Claims Survive under the Supremacy Clause

Count V of the Hospital's Complaint alleges that the Defendants' new DSH payment methodology, "is preempted by federal law under the Supremacy Clause." (Doc. 1, ¶ 165.) The Hospital argues that the Defendant's "actions" in using the new payment methodology do not comply with the procedural or substantive requirements of the Medicaid Act, conflict with federal law, and are therefore preempted. (Doc. 11, p. 23.) The Hospital does not, however, assert that Vermont's Medicaid implementation statutes or regulations either expressly or impliedly conflict with the federal Medicaid statute.

The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art VI, cl. 2. Supreme Court jurisprudence "has consistently reaffirmed the availability of injunctive relief to prevent state officials from implementing state legislation allegedly preempted by federal law." *Independent Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1063 (9th Cir. 2008) (citing cases). Thus, "state laws that 'interfere with, or are contrary to,' federal law" must be invalidated. *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824)).

Correspondingly, in order to obtain declaratory or injunctive relief under the

Supremacy Clause, a party seeking such relief must first establish a conflict between state and federal law. *See Planned Parenthood of Houston & Southeast Tex. v. Sanchez*, 403 F.3d 324, 331-35 (5th Cir. 2005) (plaintiffs could assert preemption claim under Supremacy Clause seeking declaratory and injunctive relief based on asserted conflict between state statute and federal statutes); *see, e.g., Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 850-53 (9th Cir. 2009) (allowing plaintiff-providers to bring cause of action based on Supremacy Clause, granting preliminary injunction to enjoin state from reducing Medicaid fee-for-service rates to hospitals pursuant to newly-enacted state legislation, and holding that legislation violated § 30(A)); *Independent Living Ctr. of S. Cal.*, 543 F.3d at 1048-49 (holding that "plaintiff may bring suit under Supremacy Clause to enjoin implementation of a state law allegedly preempted by federal statute, regardless of whether the federal statute at issue confers an express 'right' or cause of action on the plaintiff."). The Hospital may establish this conflict in a variety of ways, including by demonstrating that "compliance with both federal and state law regulations is a physical impossibility, or [that] state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *PG & E Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (citations and quotation marks omitted).

In this case, the Hospital asserts that it is not state *legislation* but state officials' *actions* in implementing the new DSH methodology that fail to comply with federal law. In other words, the Hospital faults the Defendants for not properly following federal law. Although this claim may be the basis for declaratory and injunctive relief, it does not arise under the Supremacy Clause which requires, as a condition precedent to its application, a state-federal law conflict. *See Livadas v. Bradshaw*, 512 U.S. 107, 120 (1994) (stating that the "Supremacy Clause requires" courts to "decide if a state rule conflicts with or otherwise stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the federal law.") (quotation and citation omitted). Because the Hospital claims no conflict between federal and state law, Count V of the Complaint fails to state a claim. Accordingly, the court hereby GRANTS the Defendants' motion to dismiss Count V.

21

# CONCLUSION

For the reasons stated above, the court:

(1) DENIES Defendants' motion to dismiss on ripeness and qualified immunity grounds;

(2) GRANTS Defendants' motion to dismiss Counts I- III, IV, and V for failure to state a claim;

(3) DENIES Defendants' motion to dismiss ¶¶ C and E of the Hospital's Prayer for Relief, and

(4) GRANTS the Defendants' motion to dismiss ¶¶ B and F of the Hospital's Prayer for Relief.

SO ORDERED.

Dated at Burlington, District of Vermont this 9th day of April, 2010.

Christina Reiss
United States District Court Judge